IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **KATHRYN JOLLIFF,**<br><br>Plaintiff,<br><br>v.<br><br>**THE ROGERS COUNTY SHERIFF'S DEPARTMENT, JOHN DOES, AND JANE DOES,**<br><br>Defendants. | Court No. 4:24-cv-00065-JCG-SH |

## OPINION AND ORDER

Plaintiff Kathy Jolliff ("Plaintiff" or "Jolliff") filed this action alleging constitutional deprivations under 42 U.S.C. § 1983 resulting from her detention by Defendants the Rogers County Sheriff's Office ("Sheriff's Office") and unidentified employees and agents of the Sheriff's Office ("Doe Defendants"). Compl. [Doc. 2]; Am. Compl. [Doc. 5]. The Sheriff's Office moves to dismiss Plaintiff's claims against the Sheriff's Office pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Sheriff's Office's MTD Pl.'s Am. Compl. Def. Sheriff's Office & Br. Supp. ("Sheriff's Office's Motion" or "Sheriff's Office's MTD") [Doc. 9]. Plaintiff filed its Response Opposing Motion to Dismiss. Pl.'s Resp. Opp'n MTD ("Pl.'s Resp.") [Doc. 20]. The Sheriff's Office filed a reply and supplemental authority. Def.

Sheriff's Office's Reply Pl.'s Resp. Sheriff's Office's MTD ("Sheriff's Office's Reply") [Doc. 23]; Pl.'s Mot. Leave File Supp. Auth. [Doc. 29]. For the following reasons, the Sheriff's Office's Motion is denied.

## BACKGROUND

Plaintiff and her grandson were arrested by employees of the City of Catoosa Police Department ("Police") on the evening of February 26, 2022. Am. Compl. ¶¶ 7, 45. The Police used physical force against both Jolliff and her grandson. Id. ¶¶ 27–39. Jolliff alleges that the force applied by the Police resulted in an injury to her left shoulder and that she complained of the injury several times during the arrest. Id. ¶¶ 34–35, 48.

Jolliff was transported to the local police station and then to the Rogers County Jail ("Jail"). Id. ¶¶ 45, 56. While in the custody of the Sheriff's Office, Jolliff experienced severe swelling and discoloration of her left arm and an inability to use her left arm. Id. ¶¶ 45, 78. She complained of her injuries and requested medical care. Id. ¶ 58. Because of her injury, Jolliff required the assistance of a Deputy Sheriff to remove her clothing and don a Jail jumpsuit. Id. ¶¶ 60–61. Jolliff spent the night incarcerated in the Jail, sitting on a bench in an upright position. Id. ¶¶ 62–63, 65. Throughout the night, Jolliff made requests for medical attention to multiple Jail staff members. Id. ¶ 66. In response, she was accused of faking her injury and told to "suck it up" and "quit whining." Id. ¶ 64.

The following morning, Jolliff was booked and released. Id. ¶ 67. Before leaving the Jail, Jolliff was told to remove her Jail jumpsuit and redress in her personal clothing. Id. ¶ 68. She was not provided with assistance and was unable to fully dress before departing the Jail. Id. ¶¶ 68–70.

Following her release, Jolliff visited Hillcrest Hospital and was examined by medical professionals. Id. ¶¶ 71–72. An X-ray and CT scan were performed and Jolliff was diagnosed with a displaced angulated fracture of the surgical neck of the left humerus. Id. ¶¶ 34, 44, 72–73. Jolliff underwent surgery on February 28, 2022, involving the installation of a plate and multiple screws in her arm. Id. ¶ 77. Following surgery, Jolliff required multiple months of home nursing care and physical therapy. Id. ¶ 79.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that pleadings contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. Proc. 8(a)(1). If pleadings fail to state a claim, in whole or in part, on which a court may grant relief, a defendant may seek to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6). Fed. R. Civ. Proc. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

(2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." Id. In considering a motion to dismiss, the Court must assume the factual allegations contained in the complaint to be true and draw all reasonable inferences in favor of the non-moving party. Twombly, 550 U.S. at 555–56. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. Iqbal, 556 U.S. at 679.

## DISCUSSION

Plaintiff brings this action under 42 U.S.C. § 1983, which provides a civil remedy for a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by a person acting under the color of state law. 42 U.S.C. § 1983. Plaintiff's Amended Complaint alleges that the Doe Defendants were callously indifferent to Plaintiff's medical needs and failed to provide needed medical care, asserting a claim of municipal liability against the Sheriff's Office. Am. Compl. ¶¶ 85–103. Three theories are offered in support of Plaintiff's municipal liability claim: pattern or practice, failure to train, and failure to supervise. Id. ¶¶ 91–103. Defendant Sheriff's Office argues that Plaintiff has not

articulated sufficient factual allegations to support any of the offered theories of municipal liability. Sheriff's Office's MTD at 3–6, 8–18.

Plaintiff essentially contends that the Sheriff's Office and Jail staff violated her Eighth and Fourteenth Amendment rights to be free from cruel and unusual punishment. Under the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, including "adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832–33 (1994) (internal quotation omitted). This same duty extends to pretrial detainees under the Due Process Clause of the Fourteenth Amendment. Martinez v. Beggs, 563 F.3d 1082, 1088 (10th Cir. 2009).

As an instrumentality of a municipality, the Sheriff's Office will not be held liable under Section 1983 based on only the wrongful acts of its employees or agents. Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 694 (1978). To establish a claim for municipal liability under Section 1983, a plaintiff must demonstrate: "(1) the existence of a municipal policy or custom and (2) a direct causal link between the policy or custom and the injury alleged." Graves v. Thomas, 450 F.3d 1215, 1218 (10th Cir. 2006). The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit Court of Appeals") has recognized that a "municipal policy or custom" may take the form of:

(1) "a formal regulation or policy statement"; (2) an informal custom "amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law'"; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."

Bryson v. Oklahoma City, 627 F.3d 784, 788 (10th Cir. 2010). When the injury complained of by the plaintiff was not inflicted directly by the municipality, but was caused by a municipal employee, the Court must rigorously apply standards of culpability and causation to ensure that the municipality is not held liable for the bad acts of its employees. Waller v. City & Cnty. of Denver, 932 F.3d 1277, 1284 (2019).

### I. Pattern or Practice

Plaintiff's first theory of municipal liability is that the actions of the Sheriff's Office employees and agents demonstrated that the Sheriff's Office had a de facto policy or custom of "directly engag[ing] in a pattern of decisions that violate constitutional rights." Am. Compl. ¶¶ 91–94. This alleged pattern includes the practice of not employing medical professionals at certain times, leaving care determinations to unqualified staff members. Id. Defendant contends that Plaintiff

has not alleged facts showing the existence of a policy or practice to deny medical care to detainees at the Jail. Sheriff's Office's MTD at 10–12.

To plead a pattern or practice claim against the Sheriff's Office, Plaintiff must show (1) the existence of a municipal policy or custom and (2) a direct causal link between the policy or custom and her injury. Graves, 450 F.3d at 1218. Policies are the "decisions of a duly constituted legislative body or an official whose acts may fairly be said to be those of the municipality itself." Carney v. City & Cnty. of Denver, 534 F.3d 1269, 1274 (10th Cir. 2008) (quoting Marshall v. Columbia Lea Reg'l Hosp., 345 F.3d 1157, 1177 (10th Cir. 2003)). Customs are "act[s] that, although not formally approved by an appropriate decision maker, [have] such widespread practice as to have the force of law." Id. Plaintiff is not required to show that similar conduct has repeatedly occurred in the past in order to establish the existence of a pattern, practice, or custom. See Pembaur v. City of Cincinnati, 475 U.S. 469, 482 n.11 (1986).

In arguing that a de facto policy exists to deprive detainees of medical care, Plaintiff asserts that "the Sheriff has directly engaged in a pattern of decisions that violate constitutional rights" and "that the conduct of lower-level employees is so pervasive that high-ranking officials knew of the custom or recklessly disregarded its existence." Am. Compl. ¶ 93. In her response to the motion to dismiss, Plaintiff urges the Court to consider the reputation of the Sheriff's Office and prior

Section 1983 claims, in lieu of concrete examples of an official policy. Pl.'s Resp. at 9–12. The Sheriff's Office counters that such arguments were not raised in Plaintiff's Amended Complaint and should not be considered by the Court. Sheriff's Office's Reply at 3–4. The Court is not precluded from considering additional facts and theories included in a response to a motion to dismiss, if the new facts and theories are consistent with those raised in the original complaint. See Hayes v. Whitman, 264 F.3d 1017, 1025 (10th Cir. 2001).

In her Amended Complaint, Plaintiff pled that she was not evaluated by a qualified medical professional while detained at the Jail. Am. Compl. ¶¶ 59, 63, 90. Plaintiff also alleges that she made Jail staff aware of her injury through multiple complaints and that at least one Sheriff's Deputy was in a position to observe her injuries while assisting Plaintiff in changing clothes. Id. ¶¶ 51, 56, 58, 61. At the pleading stage, Plaintiff is required only to allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence of" the alleged offence. Twombly, 550 U.S. at 545. Accepting the facts as plausibly pled, the Jail staff's persistent inaction and disregard of Plaintiff's requests for care are sufficient for the Court to infer the existence of a pattern or practice of the unconstitutional denial of medical care. Whether such a policy or practice actually exists and its specific nature may be better understood after discovery.

For these reasons, the Court concludes that Plaintiff's pattern or practice claim is sufficiently pled to state a plausible claim of municipal liability.

## II.     Failure to Adequately Train or Supervise Employees

Plaintiff alleges that employees of the Sheriff's Office were not properly trained to know that pretrial detainees are entitled to the protection of their health and safety through access to medical care, and that inadequate training caused the Sheriff's Office employees to show deliberate indifference to Plaintiff's medical needs.  Am. Compl. ¶¶ 95–97.  Plaintiff further alleges that the Sheriff's Office staff in supervisory roles knowingly directed or permitted the conduct that deprived her of medical care and failed to protect her health.  Id. ¶¶ 98–103.  Defendant argues that Plaintiff's claims of the Sheriff's Office's failure to train and failure to supervise should be dismissed because Plaintiff has not pled facts showing that the Sheriff's Office had notice of a pattern of constitutional violations, the Sheriff's Office acted with deliberate indifference to the need for adequate training or supervision, and Plaintiff's injuries were caused by deficiencies in training or supervision.  Sheriff's Office's MTD at 12–18.  Plaintiff counters that the facts alleged in its Amended Complaint are sufficient to allow the Court to make a reasonable inference that the conduct of the Sheriff's Office staff was the product of inadequate training and supervision.  Pl.'s Resp. at 12–15.

The United States Supreme Court has cautioned that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 563 U.S. 51, 61 (2011). To establish a claim of failure to train, a plaintiff must prove: (1) "the existence of a county policy or custom involving deficient training;" (2) "the policy or custom's causation of an injury;" (3) "the county's adoption of a policy or custom with deliberate indifference." Lance v. Morris, 985 F.3d 787, 800 (10th Cir. 2021); see also City of Canton v. Harris ("City of Canton"), 489 U.S. 378, 388 (1989)). The Tenth Circuit Court of Appeals applies the same requirements to allegations of a failure to supervise. Whitewater v. Goss, 192 Fed. App'x 794, 797 (10th Cir. 2006). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Bd. of Cnty. Comm'rs v. Brown ("Brown"), 520 U.S. 397, 410 (1997); Serna v. Colo. Dep't of Corrections, 455 F.3d 1146, 1154–55 (10th Cir. 2006). A municipal actor may be found to have been deliberately indifferent when the need for more or different training is obvious and the inadequacy of the training provided is likely to result in a violation of a person's constitutional rights. Schneider v. City of Grand Junction Police Dep't, 717 F.3d 760, 773–74 (10th Cir. 2013) (quoting City of Canton, 489 U.S. at 390). Similarly, deliberate indifference by a supervisor may be established if the supervisor knew that he was creating a

situation that posed a substantial risk of a constitutional harm.  See Serna, 455 F.3d at 1154–55.  In most cases, the municipality must have actual or constructive notice that its action or failure to act is substantially certain to result in a violation of a federally protected right and make the conscious or deliberate choice to disregard that risk.  Barney v. Pulsipher, 143 F.3d 1299, 1307 (10th Cir. 1998) (citing Brown, 520 U.S. at 407).  Notice can be found if the violation of a federally protected right is highly predictable or plainly obvious, such as the need to train employees in specific skills necessary to handle common situations.  Bryson, 627 F.3d at 789 (quoting Barney, 143 F.3d at 1307–08).

In Lance v. Morris, 985 F.3d 787 (10th Cir. 2021), the Tenth Circuit Court of Appeals considered a similar case in which a detainee was not provided with medical care after complaining of a painful condition and requesting medical attention.  985 F.3d at 792.  The plaintiff in Lance was not provided with medical care until the detention center's nurse came on duty three days after the initial request for medical care.  Id.  At the nurse's instruction, the plaintiff was taken to a local hospital for examination.  Id.  An emergency physician examined the plaintiff and provided medication that was not effective.  Id.  The physician determined that the plaintiff would require treatment at a second hospital approximately 90 miles away.  Id.  Rather than take the plaintiff to the second hospital, the guards transported the plaintiff back to the detention center, where he was released on his

own recognizance.  Id.  A family member took the plaintiff to the second hospital after his release, where he underwent surgery.  Id.  The Lance plaintiff suffered permanent injuries.  Id.  On these facts, the Tenth Circuit Court of Appeals held that a factfinder could reasonably infer that the elements of a failure to train claim were satisfied and reversed the trial court's grant of summary judgment for the defendant.  Id. at 800–03.

With regard to the first element—"the existence of a county policy or custom"—Plaintiff has not pointed to a specific policy of the Sheriff's Office concerning determinations as to whether to administer a medical examination or care.  It is unlikely that Plaintiff would possess sufficient knowledge of the Sheriff's Office's internal policies and customs prior to discovery.  See Estate of Osuna v. Cnty. of Stanislaus, 392 F. Supp. 3d 1162, 1174–75 (E.D. Cal. 2019) ("[T]he details of the alleged policy or custom, however, is a topic properly left to development through discovery.  It is a rare plaintiff who will have access to the precise contours of a policy or custom prior to having engaged in discovery, and requiring a plaintiff to plead its existence in detail is likely to be no more than an exercise in educated guesswork.").  It is reasonable, based on the facts alleged, to infer that the Sheriff's Office had a policy or practice in place similar to that in Lance, under which jail staff, in the absence of a physician or nurse, were responsible for determining the immediacy of medical complaints and the

appropriate action.  <u>Lance</u>, 985 F.3d at 800–801.  With respect to the second element—causation—it is reasonable to infer that the Jail staff's decision to not provide a medical examination or care may have exacerbated Plaintiff's injuries or, at the least, prolonged her suffering.

The Court concludes that Plaintiff has sufficiently pled the first two elements, and now turns to whether the Sheriff's Office was deliberately indifferent in its policy.  <u>Id.</u> at 800.  In <u>Lance</u>, the Tenth Circuit Court of Appeals endorsed a three-part test promulgated by the United States Court of Appeals for the Second Circuit that considers whether: (1) "[T]he county's policy makers know 'to a moral certainty that [their] employees will confront a given situation;'" (2) "[T]he situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult;" and (3) "[T]he wrong choice . . . will frequently cause the deprivation of a citizen's constitutional rights." <u>Id.</u> (quoting <u>Walker v. City of New York</u>, 974 F.2d 293, 297–98 (2d Cir. 1992) (alterations in original)).

It is reasonable to conclude that policymakers were aware that Jail staff would be in a position to make decisions regarding whether to offer medical care to detainees.  The Jail did not employ a medical professional during overnight hours, but medical emergencies are inevitable, particularly in the context of arrests and detention.  It is an unavoidable reality that Jail staff would be faced with

questions of whether to provide medical care or contact a medical professional during the periods in which a medical professional was not present at the Jail. See id. at 802. The failure to accurately identify serious medical situations that require treatment or further examination could predictably violate a detainee's right to medical care. See id. at 803. Because judging the severity of a medical complaint can be challenging, training and proper supervision would benefit Jail staff in triaging detainee complaints and injuries. See id. at 802. In this case, Plaintiff made multiple complaints of pain and her injuries were observed by a Deputy Sheriff. Am. Compl. ¶¶ 58, 61, 66. In response, she was told to "suck it up" and "quit whining," and was denied medical care by Jail staff. Id. ¶ 64. Based on these pled facts, it is plausible to infer that the Jail staff lacked the training and supervision necessary to assess Plaintiff's medical needs and to apply proper care.

For these reasons, the Court concludes that Plaintiff's failure to train and failure to supervise claims are sufficiently pled to state a plausible claim of municipal liability.

## CONCLUSION

ACCORDINGLY, IT IS HEREBY ORDERED THAT:

(1)  The Sheriff's Office's Motion to Dismiss Plaintiff's Amended Complaint [Doc. 9] is denied.

(2) The Parties shall meet and confer and file with the Court on or before June 10, 2025 a joint proposed Scheduling Order in this action along with a cover letter requesting the Court to enter the joint proposed Scheduling Order (if there are no disputes or other issues concerning scheduling that the Court needs to address) or to schedule a Scheduling Conference.  If the Parties are unable to agree upon a proposed scheduling order, each Party shall file a proposed scheduling order by the deadline and contact my Case Manager, Steve Taronji, by telephone at (212) 264-1611 or via e-mail at steve_taronji@cit.uscourts.gov, to arrange a video conference with the Court.

IT IS SO ORDERED this 3rd day of June, 2025.

                                      /s/ Jennifer Choe-Groves
                                      Jennifer Choe-Groves
                                      U.S. District Court Judge[*]

---

[*]Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.